## TOWN OF NAHANT v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. March 20, 1905.)

No. 529.

1. EMINENT DOMAIN—CONDEMNATION OF LAND BY UNITED STATES—RULE OF COMPENSATION.

The United States, in proceedings to condemn land for governmental purposes, exercises its own right of eminent domain, subject to the limitation of the federal Constitution that private property shall not be taken for public use without just compensation, and does not proceed under the right of the state; and the right to compensation and its measure may be different from that in a state condemnation proceeding with respect to property which had previously been appropriated to public or municipal uses under the laws of the state.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 19–23, 131.]

2. SAME.

An act of a state Legislature, like the one in question, authorizing the condemnation of property within the state by the United States for fortification purposes ,operates merely as a formal assent to the exercise by the general government of its own right of eminent domain, and does not entitle the United States to stand upon the local law as to the rule of damages, where property taken by the state for a second public use is connected with a prior public use authorized by the state.

3. SAME—PROPERTY OF MUNICIPAL CORPORATION—RIGHT TO COMPENSATION.

In proceedings by the United States to condemn land within the boundaries shown by a plat for fortification purposes, together with all roads, ways, and avenues, and all buildings and structures thereon, and all interests therein, the constitutional rule of just compensation entitles a municipal corporation to be compensated for physical structures and improvements which, under the laws of state, it has, by means of taxation, placed or acquired on the lands or streets taken, for the use of its inhabitants or the local public, such as water or sewer pipes, curbing, or the like, of which it is deprived by the taking of the property by the general government.

In Error to the District Court of the United States for the District of Massachusetts.

For opinion below, see 128 Fed. 185.

James R. Dunbar and William Hoag, for plaintiff in error.
William H. Garland, Asst. U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This is a proceeding instituted by the United States for condemnation of certain land at Nahant needed by the general government for fortifications and coast defenses, together with all roads, ways, and avenues included in the description of land, as well as all buildings and structures. The petition of the United States contains a prayer for notice to certain parties of interest expressly named, and a general prayer for notice to all parties interested in the lands described, and parts thereof, and rights therein, and for an appraisement and valuation by a jury of the land and ways and interests therein, and any buildings

136 F.—18

standing on said land, including all damages sustained by the owner or owners thereof.

Following the prayer of the petition, the District Court ordered notice to the parties of interest named, and to any and all other persons, corporations, and associations who may be interested in the lands described in the petition, or any parts thereof or rights therein, and that they and each of them appear before the court, and show cause why the petition should not be granted as prayed for.

The order further directed the marshal to serve a copy of the petition upon parties of interest expressly named, and to give notice to all persons, corporations, or associations interested, by publication, and the return shows that notice was in fact given in accordance with the order. Subsequently, but seasonably, the town of Nahant, in which the property is situated, filed its application for leave to be admitted as a party, and for leave to file its answer to the petition, that it might recover from the United States fair damages for the taking of its property.

In pursuance of its purpose to be heard and recover fair damages, the town filed its answer, in which it claimed interests in the condemned property, consisting of easements and rights of way over which it had built, at great expense, macadamized, crushed stone, and graveled streets, and under which, and in lands not streets, it had built and laid sewers and sewer pipes. The answer further sets forth that the town had built and laid water pipes, and that the taking of the land and the streets by the petitioner, and cutting off the sewers, stop the drainage of the land outside the land condemned, and would compel the town to build and maintain a new and expensive system of drainage. The answer concludes with a prayer that the jury may appraise the damages by reason of the taking of the land, its easements and improvements, including streets, sewers, and water pipes, for which compensation was demanded from the petitioner.

After service, and before trial, an agreement as to values and damages was duly entered into between the government and certain of the parties of interest, and subsequently a jury was duly impaneled, to which the cause was committed. At the trial it was admitted that no plan had been filed in the office of the Secretary of State of Massachusetts, as required by the act of May 6, 1902 Laws 1902, p. 289, c. 373), and that certain taxes were assessed upon the land in question on the 1st day of May, 1902; and the town claimed as an element of damage, or as an interest to be appraised and valued, a lien for the amount of the taxes assessed upon land condemned.

To state the substance of the town's claim for compensation, it offered to prove that within the territory condemned certain streets had been located and constructed by the town; that in such streets there were water pipes belonging to the town, connecting with and forming a part of its system, and that the taking by the United States would compel the town to construct other lines for the purpose of carrying water to its inhabitants, and for the purpose of completing the town water system; and that in such streets there were certain sewers, the property of the town, and part of its sewer

system, discharging through an outlet into the ocean, which were taken by the government, and that the sewers taken cared for the sewage of other portions of the town not taken; and that the taking of the sewers condemned would make it necessary to construct new sewers, and construct a new outlet or outlets for the sewerage system of the town.

The court excluded all such evidence as irrelevant and incompetent, and ruled that the town was not entitled to damages either on account of taxes, or because of the taking of the land in which the water pipes and sewers were laid, and the town excepted. No questions were submitted to the jury as to the interests of the town, and the jury rendered verdicts condemning the land described in the petition, and awarded damages to the owners of the fee, but none to the town; and a decree of condemnation was entered, covering the land described, together with all roads, ways, and avenues included in the description of the land, with all buildings and structures on the described premises; and the decree further recites that the land taken is shown upon a plan annexed to the petition.

It results, therefore, that we are confronted with the question whether the claim and offer of the town disclosed any interest in the property taken and condemned, for which it was entitled to compensation.

The petition in this case was filed April 29, 1902, and sets forth that the proceeding was instituted by the Attorney General of the United States, upon the application of the Secretary of War, in accordance with an act of Congress approved August 1, 1888, c. 728, § 1, 25 Stat. 357 [U. S. Comp. St. 1901, p. 2516], entitled "An act to authorize condemnation of land for sites of public buildings, and for other purposes." In the following May there was passed in the state of Massachusetts an act entitled "An act to approve the acquisition by the United States of a tract of land in the town of Nahant." Chapter 373, p. 289, Acts 1902. It is now contended by the United States that this proceeding for condemnation is so far authorized by the Massachusetts statute as to entitle the United States to stand upon the Massachusetts law as to the rule of damages where property taken for a second and different public use is connected with a prior public use authorized by the state, and that the rule of the local law is controlling.

We do not accept such view. The Massachusetts act was merely a recognition of the inherent power of the central government to exercise its own right of eminent domain, and a consent which amounts to a waiver of its jurisdiction under certain expressed limitations, and of all objection, if any, which the commonwealth might assert as a state upon consideration of its prior grants or delegations of quasi public power to municipal or other corporate interests. By the terms of the Massachusetts statute, it was an act to approve of and consent to the acquirement by the United States, through purchase or by condemnation, of land within its territory for purposes of national defense, reserving concurrent jurisdiction with the United States in and over the area to be acquired, only so far that all civil and criminal process issuing under authority of the

commonwealth might be executed on the land so acquired. The act does not employ any express words of grant, nor does it contain any expression indicating a purpose to transfer property, municipal or otherwise, to the United States, without compensation. The manifest and only purpose of the state was to acquiesce in the idea that the general government might acquire by purchase, or in its inherent right, through condemnation, under its own constitutional limitations—its own safeguards and proceedings—territory within the limits of Massachusetts for purposes of national defense.

In the case of Kohl et al. v. United States, 91 U. S. 367, 23 L. Ed. 449, where it was contended that the Circuit Court had no jurisdiction over a proceeding brought by the United States for condemnation of property within a state, and that the condemnation provided for by act of Congress meant condemnation by the state government in the exercise of its power of eminent domain, and that, if the state grant of power was accepted by the United States, it must be exercised in the mode and by the tribunal the state had prescribed, it was broadly, distinctly, and emphatically asserted that the principle of the right of eminent domain exists in the government of the United States as an inherent, necessary, and independent attribute of sovereignty; that the power of the United States in such respect is complete, and without any limitation that it shall be exercised in the manner prescribed for condemnation by a state; and that a proceeding in the United States court for condemnation for necessary public and federal uses is one by the United States government in its own right, and by virtue of its own eminent domain. See, also, United States v. Gettysburg Electric Railway, 160 U. S. 668, 679, 16 Sup. Ct. 427, 40 L. Ed. 576.

The United States, in the exercise of such inherent and paramount right of eminent domain, is under its own limitation and injunction in respect to questions relating to just compensation for property taken in its own right; and this results from the fifth amendment to the federal Constitution, which declares that private property shall not "be taken for public use without just compensation."

What would be just compensation for property taken by the general government in its exercise of the right to condemn property used for a prior federal public purpose, under its prior grant or franchise, might not be just compensation for property taken with which it had theretofore had no connection, and to which it therefore sustains the relation of an entire stranger to the title and to the property condemned.

Again, what would be just compensation in a condemnation proceeding by a state, where property had been dedicated to a prior public use under the exercise of a franchise granted by a state, might not be just compensation where property and rights are taken by the general government, in an independent proceeding, in the exercise of its own original and inherent right of eminent domain, to take property and rights upon just compensation. This would perhaps depend upon whether the general government, through the consent or grant of the state, and under the doctrine of subrogation, has succeeded to all the rights which would inure to the state in

case of its condemnation of property created in connection with an existing easement or franchise which the state had previously granted.

We do not, however, deem it necessary to inquire as to the status of the local law in respect to the rule of compensation where the state condemns property for a second public use which was created and dedicated to the prior public use in connection with a franchise previously granted by the state. If the right rests with the state of Massachusetts to condemn without compensation, for another and a different public use, property in the nature of structures created and used by municipal corporations in the exercise of a public easement or franchise like that in question, granted through the general law of a state, there is nothing in the act warranting the conclusion that the state intended to transfer any such right to the United States. It results, therefore, as we have said, that the general government is proceeding in this case in its own right of eminent domain, under the limitations of the Constitution, to secure property for a public and paramount purpose upon just compensation; the state, through its statute of approval and consent, having simply acquiesced in the idea that it may so proceed.

The situation, so far as the municipality is concerned, is this: The town of Nahant, under general laws of the state, exercised the municipal right to build streets for the accommodation of public travel, and to construct water and sewer systems for the comfort and protection of the local public. So far as lands within ways dedicated to public use and travel are concerned, it is not seriously contended in argument that the municipality had any title thereto which it can set up for purposes of compensation. Therefore we need not deal with any possible question in that respect. It is contended, however, that property in structures, such as pipes and other material connected with sewer and water systems, and in artificial structures in connection with streets, may become the subject of municipal property, and thus stands differently.

Even if it be true, which we doubt, that a structure like the Brooklyn Bridge (a public way resting at each end upon land dedicated by a municipality, under the laws of a state, to a public purpose) can be taken by the state, together with the land, for a second and different public use, without compensation, and if it be true that the general government (a different entity or sovereign) may, under its own condemnatory proceedings, take land dedicated to a public state use, for a second though a different and federal public use, without compensation, it would still be difficult to see how the proposition of federal constitutional just compensation can be sustained upon that ground, and to the extent that the general government may, for its own use in connection with fortifications, warships, or other federal defensive purposes, take the bridge (the iron, the steel, the granite, and other material in the artificial structure), which belong to the municipality, and may be worth millions of dollars, without any compensation or indemnity to the municipal entity which paid for it, and to which it belongs.

The act of Congress and the allegations in the pleadings contem-

plate just compensation for buildings and other structures as well as land.

The act of Congress authorizes condemnation of real estate by the United States, under judicial process, for public buildings or for other public uses. The petition directs itself against certain lands located in Nahant, particularly described by metes and bounds, and asks for condemnation thereof, "together with all roads, ways, and avenues included in the foregoing description, with all buildings and structures upon the described premises, all of which land taken is shown upon a plan annexed to this petition, entitled, 'Plan of the United States Reservation, Nahant, Massachusetts,' and to which reference is to be had for a more particular description of lands taken hereby." The petition then proceeds to ask, upon due notice to all the parties interested in the lands and parts thereof and rights therein, and after each and all parties interested have been heard, for "a faithful and impartial appraisement and valuation of said lands and ways, and interests therein, and any buildings standing on said lands, including all damages sustained by the owner or owners thereof."

It seems clear, therefore, that all structures in and upon the territory described, and all interests therein, have been taken; and this results from the fact that the petition, in pursuance of the high exercise of the paramount federal right of eminent domain, directs itself, without reservation or qualification, against the territory described upon a plan, and all ways, avenues, buildings, and structures which the petition alleges have been taken; and the decree, as well, directs itself against the territory, "together with all roads, ways, and avenues included in the foregoing description, with all buildings and structures upon the described premises, all of which land is·shown upon a plan," etc., and the decree proceeds to condemn, without reservation, all such interests, and with apt words to vest the fee in the United States for its use forever.

The authorities, we think, sustain the text of Lewis on Eminent Domain in respect to what constitutes a taking of property—that, whenever lawful rights of an individual to the possession, use, or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is pro tanto taken. Beyond question, the authorities sustain the proposition as well that, where the right to take property is exercised as a paramount right, under the doctrine of eminent domain, and under apt proceedings, which at once and without qualification or reservation take hold of the body of the estate, and leave open for adjustment and ascertainment the question of just compensation only, such taking constitutes a taking of the entire property, within the meaning of the law.

We think the statute and the proceedings reasonably and fairly contemplate constitutional just compensation for all property interests taken or destroyed. The right to compensation is an incident of the power to take, and, as said in Monongahela Navigation Company v. United States, 148 U. S. 312, 326, 13 Sup. Ct. 622, 37 L. Ed. 463, the just compensation provided for by the Constitution means

emphatically a full and perfect equivalent for the property taken, and, in United States v. Gettysburg Electric Railway, 160 U. S. 668, 680, 16 Sup. Ct. 427, 40 L. Ed. 576, the full value of the property taken is to be paid.

We do not deem it necessary to engage in an extended discussion of questions relating to municipal ownership in property, or to enter upon a discussion of the confused state of the authorities in respect to the question of compensation when property already used for a public purpose is taken for a broader or another distinct public use by the sovereignty creating the franchise upon which the first public use was predicated. It is quite sufficient to say that the older authorities as to the reserved right of the state to condemn country roads for state use without compensation are at least obsolete so far as having application to municipal property rights under the recent extraordinary growth of municipal properties in modern times, and under modern legislative enactment. There is a broad distinction between rural highways and urban streets. Lewis on Eminent Domain, § 91c, and notes.

The question of the reserved right of the state to alter, amend, and withdraw its franchises or easements, and the effect of the exercise of such right upon property based thereon, received discussion in section 68 of Dillon's Municipal Corporations (4th Ed.), and notes thereto; and in section 71, and elsewhere, the subject of the legislative power over public and private property of municipalities.

Quite aside, however, from the extent of the right, or the limitations upon the right, of a state, under its reserved power, to devote private and public municipal property to a second public use, the weight of modern authority is altogether in favor of the proposition that structural properties created or acquired through the exercise of municipal functions in connection with a franchise or easement granted by the state will not be taken, even by such sovereignty, for a distinct and different public use, without compensation.

Speaking generally, the authorities sustaining the doctrine of a dedication to a second public use without compensation have reference to the rights of the original landowner, who has once been paid full compensation for the land taken for public purposes. This distinction should always be borne in mind, and it is difficult to see how, in principle, such authorities apply to the situation of a municipality which has not once been paid for its property dedicated to a public use, or to a situation where a municipality, through burdens of taxation resting upon its units, has created or acquired, in its own distinct municipal right, tangible property and structures which it holds as trustee for the beneficial use of its inhabitants and the local public. There would seem to be no reason why such property should not be treated, at least for purposes of constitutional just compensation, as private municipal property. The burden of its property creations, through taxation, rests upon the units of the local municipality. Property creations and existence are necessary incidents of municipal government. There is no just reason, under such circumstances, for saying that because of the ordinarily accepted legal fiction that structural property attaches to the legal title to the

realty, and because the municipality holds the legal right to use the land, rather than the legal title to the land, the municipal trustee of the body politic which paid for the structural property should not have just compensation from a distinct and independent entity which takes it, not as owner of the land, but under arbitrary right, and for a purpose entirely different than that for which the property was originally designed and paid for, and to which it was originally dedicated. As between parties like these, where the entity taking the property is in a legal sense a stranger to the municipal right, it is difficult to see any difference in principle between municipal property consisting of flagstones, granite curbings, and lamp-posts, or other things which would be necessary and valuable for use in connection with the street system of a municipality, and municipal property consisting of waterworks, elaborate sewer pipes, or electric lighting systems, furnishing water or light upon money rates to individual users, or free to the inhabitants of the municipality, except the burden which results from taxation.

The situation in the case we are considering does not require an analysis of the many authorities in respect to municipal ownership and municipal right of compensation where condemnation is made by a state for a second public use, and our general observations in that respect only bear upon the question whether the state of Massachusetts undertook to transfer to the United States its right, if any, to take for a second use property of the character in question without compensation. In determining the question whether the state of Massachusetts, through its legislative act of 1902, to which we have referred, undertook to transfer to the United States any supposed right to condemn without compensation property resting upon its franchise, it must be borne in mind that corporate, charter, and contract rights are protected by the Constitution of the United States as property (West River Bridge Company v. Dix, 6 How. 507, 12 L. Ed. 535)—a doctrine fully recognized by the courts of Massachusetts (Boston Water Power Company v. Boston & Worcester Railway Company, 23 Pick. 360; Central Bridge Corporation v. Lowell, 4 Gray, 474) as well as by the courts of the United States (Monongahela Navigation Company v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463). It may be stated as an unquestioned rule that the right to take property already devoted to public use cannot rest in doubtful construction. The right must be given in express terms or by necessary implication. Boston Water Company v. Boston & Worcester Railway Company, 23 Pick. 360, 398; Inhabitants of Springfield v. Connecticut River Railway, 4 Cush. 63, 71, 72.

There is nothing in the terms of the Massachusetts act which makes the United States its successor in respect to the control of the state over its municipal or other franchises, or in respect to its right to take tangible property of municipal corporations, and the whole situation is such as to make it unreasonable that rights of successorship in that respect should result by implication. In the case of Monongahela Navigation Company v. United States, 148 U. S. 312, 344, 13 Sup. Ct. 622, 633, 37 L. Ed. 463, to which we have referred, Mr. Justice Brewer, after referring to the Dartmouth College Case

as establishing the doctrine that rights created by an act of incorporation cannot be set aside by either party to it, says:

"The state has never assumed to exercise any rights reserved in the charter. * * * So far as the state is concerned, all its grants and franchises remain unchallenged and undisturbed in the possession of the navigation company. The state has never transferred, even if it were possible for it to do so, its reserved rights to the United States government; and the latter is proceeding, not as the assignee, successor in interest, or otherwise of the state, but by virtue of its own inherent supreme power. * * * Our conclusions are that the navigation company rightfully placed this lock and dam in the Monongahela river; that, with the ownership of the tangible property legally held in that place, it has a franchise to receive tolls for its use; that such franchise was as much a vested right of property as the ownership of the tangible property; that the right of the national government, under its grant of power to regulate commerce, to condemn and appropriate this lock and dam belonging to the navigation company, is subject to the limitations imposed by the fifth amendment—that private property shall not be taken for public uses without just compensation."

True, in that case the corporation was not a municipal corporation; still, in a municipal situation like the one before us, where the town is not claiming right to compensation for the land or the easement dedicated to the public under state authority—a phase of the situation which we do not consider—we are unable to see why the reasoning of the Monongahela Case does not apply with full force to the rights of a municipality in respect to tangible property which it is entitled under the state law to acquire and hold, and to the natural and reasonable consequences which may result from a taking by the United States.

This proceeding is one, as already said, in which the United States stands upon its inherent and independent right to take property for necessary public purposes under the constitutional limitation of just compensation. United States v. Gettysburg Electric Railway Company, 160 U. S. 668, 675, 16 Sup. Ct. 427, 40 L. Ed. 576; Monongahela Navigation Company v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Barron v. City of Baltimore, 7 Pet. 243, 8 L. Ed. 672.

In his work on Municipal Corporations (4th Ed., §§ 66, 67, and notes), Judge Dillon observed that municipal corporations, as ordinarily constituted, possess a double character—the one, governmental, legislative, or public; the other, in a sense, proprietary or private—and over its civil, political, or governmental powers the authority of the Legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the Constitution of the particular state. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct personality or corporate individual; and as to such powers, and to property acquired thereunder, the corporation is to be regarded quo ad hoc as a private corporation. Again, at section 68, that property acquired and owned by a municipal corporation by legislative consent is not subject to an unlimited power of the Legislature over it, is conso-

nant with natural justice. The need of having property and property rights is one of the main reasons why municipal corporations are created. Under the Roman law, as declared by Savigny (Jural Relations, § 85), "Property capacity is the essential quality of a juristical person." While under the state authorities there is some confusion as to the extent to which this doctrine is accepted, the great weight of authority, as will be seen by reference to the authorities collected in the notes to which I have referred, sustains the principle of the necessary municipal right of holding property.

Again, according to Judge Dillon's text (section 68), "If a municipal corporation, as representing a distinct community, be regarded as a legal person, the Legislature, in effect, says to it, 'You may at your own expense acquire property;'" and in County of Richmond v. County of Lawrence, 12 Ill. 1, 8, Judge Trumbull, in speaking of public municipal corporations, says, "The corporation is to be regarded as a private company. A grant may be made to a public corporation for purposes of private advantage, and, although the public may also derive a common benefit therefrom, yet the corporation stands on the same footing, as respects such grant, as would any body of persons upon whom like privileges were conferred;" and in Montpelier v. East Montpelier, 29 Vt. 12, 19, 67 Am. Dec. 748, that "towns, and other public corporations may have private rights and interests vested in them under their charters, and as to those rights they are to be regarded and protected the same as if they were the rights and interests of individuals or of private corporations."

The theory of property rights of municipalities is fully recognized by the Supreme Court in St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, as well as in Mt. Hope Cemetery v. Boston, 158 Mass. 509, 511, 33 N. E. 695, 35 Am. St. Rep. 515, which was a case where the double character of cities and towns was considered; and the court in the latter case, after stating the local doctrine of the power of the Legislature in respect to property held in agency of the state government for strictly public purposes, declared that:

"By a quite general concurrence of opinion, however, this legislative power of control is not universal, and does not extend to property acquired by a city or town for special purposes not deemed strictly and exclusively public and political, but in respect to which a city or town is deemed rather to have a right of private ownership, of which it cannot be deprived against its will, save by the right of eminent domain, with payment of compensation. This distinction we deem to be well founded, but no exact or full enumeration can be made of the kinds of property which will fall within it, because in different states similar kinds of property may be held under different laws, and with different duties and obligations, so that a kind of property might in one state be held strictly for public uses, while in another state it might not be. But the general doctrine that cities and towns may have a private ownership of property, which cannot be wholly controlled by the state government, though the uses of it may be in part for the benefit of the community as a community, and not merely as individuals, is now well established in most of the jurisdictions where the question has arisen."

As between a town and a state, the right of compensation for acquired property might depend in some cases upon the authority of the local municipality to hold property for a given purpose, and in

other cases upon the question whether the town holds the property as the agent of the state, for strictly public or state purposes; but, however that may be, and without elaborating further these questions, which we deem in a sense immaterial in a case like the one before us, where the municipality was authorized by the state law to raise money from the local municipal body to construct ways and construct water and sewer systems, all in a sense public, though primarily for the benefit of the local municipal community, and where the municipality has acquired property for such purposes, we have no doubt of its right to recover just compensation therefor, when taken under the right of eminent domain by a power other and higher than the state.

This case, as we have already said, comes to us upon offers of proof and upon a general ruling. Upon propositions so general and unsubstantial as offers of proof, we do not feel called upon to define all the rules which may govern in respect to damages, or to describe the mode of ascertaining the measure of damages required by the constitutional provision in respect to just compensation; nor could we understandingly do so, under propositions so general, if we were disposed to. We cannot enter upon a field so broad and indefinite as that opened by general offers of proof, for the purpose of determining all possible questions involved. Upon actual trial and upon actual proofs and distinct rulings, the situation would naturally be simplified, and the questions may be presented in one aspect or another; and we cannot now anticipate what questions would become material in the actual trial, if one is had. The general view now presented may then be changed in substantial respects. The only question for us to decide, in the present aspect of the case, is whether the municipality of Nahant had an interest in the property condemned, which it was entitled to have appraised, and for which it was entitled to have compensation. Our conclusion is that it had such an interest, and our decision does not go beyond the general question presented. We may, however, make general reference, without decision, to some of the questions discussed. If we were to undertake to anticipate and determine all possible questions upon these general offers of proof, we should have to consider the view expressed by Mr. Justice Brewer in the Monongahela Navigation Company Case, 148 U. S. 312, 326, 13 Sup. Ct. 622, 626, 37 L. Ed. 463, that the constitutional combination of the two words "just compensation" means a full and perfect equivalent for the property taken, and that the just compensation is for the property, and not to the owner, which, according to the view of the Supreme Court in that case, takes a situation like this from the rule which permits benefits to the owner to be deducted from the values in ascertaining the measure of damage to which he is entitled.

We do not look upon this case as one in which counsel for the town are seriously contending for compensation for the state franchise in respect to the municipal interests within the territory condemned. It will probably be found that the great majority of cases which hold that the value of the franchise right is to be considered upon the question of compensation, like United States v. Great Falls Mfg. Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846, Great Falls Mfg. Co. v. Garland, 124 U. S. 581, 8 Sup. Ct. 631, 31 L. Ed. 527, and

the Monongahela Navigation Company Case, 148 U. S. 343, 13 Sup. Ct. 622, 37 L. Ed. 463, have reference to a franchise granted to a corporation only quasi public—one where the right relates to a situation into which the public interest enters somewhat, but which chiefly involves an enterprise for remunerative results to the corporation.

Ordinarily structures and certain kinds of fixtures are compensated for by appraising them as a part of the realty. This is probably universally true where land is taken from the owner for public purposes. We have no doubt, however, upon principles of natural justice and of right, that a municipality should be compensated upon an appraisement of its tangible property resting upon and under land which it does not own, but with which its property is connected in the exercise of a public franchise for public purposes; and, assuming this to be so, in estimating its value all the capabilities of the property, and all the uses to which it may be applied or to which it is adapted, are to be considered. 2 Lewis on Eminent Domain, 1048; Smith on Modern Law of Municipal Corporations, 719.

The petition prays for an impartial appraisement of property taken, including "all damages sustained by the owner or owners thereof." Still, in view of the general character of the claim of the town for indemnity for the interruption to its water and sewer systems which results from taking a part thereof, we do not feel called upon to determine whether, in arriving at just compensation, or, in other words, whether, in making the municipality whole by returning an equivalent for what has been taken, just compensation for property actually taken is to be ascertained by reference to its capabilities and uses in connection with the part not taken, or (Lewis on Eminent Domain, §§ 471, 471a) by ascertaining the difference between the value of the whole property before the taking and the value of the remainder after the taking, or by ascertaining the value of the part taken, together with the damage resulting to the parts of the system outside of the territory taken, by reason of the interruption or severance.

We do not think the claim or the offer of proof sufficiently definite to justify us in assuming to decide which rule should be applied. It is said in Lewis on Eminent Domain (section 464) that, "when part is taken, just compensation includes damages to the remainder. Upon this point there is entire unanimity of opinion. 'The constitutional provision cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner.'" To these propositions there are gathered many authorities in the notes contained in the second edition of that work. Dillon says, "Regard must be had to the condition as to the shape, use, and convenience in which the residue of the property will be left" (Dillon on Municipal Corporations, vol. 2, § 624), while Mr. Justice Peckham, speaking for the Supreme Court, leaves the question in this way:

"As to the effect of the taking upon the land remaining, that is more a question of the amount of compensation. If the part taken by the government is essential to enable the railroad corporation to perform its functions, or if the value of the amount remaining is impaired, such facts might enter into the question of the amount of compensation to be awarded." United States

v. Gettysburg Electric Ry., 160 U. S. 668, 685, 16 Sup. Ct. 427, 431, 40 L. Ed. 576.

See, also, Cooley's Constitutional Limitations, 697, 700, and notes (6th Ed.). United States v. Alexander, 148 U. S. 186, 13 Sup. Ct. 529, 37 L. Ed. 415; United States v. Truesdell, 148 U. S. 196, 13 Sup. Ct. 532, 37 L. Ed. 419; Great Falls Mfg. Co. v. Garland, 124 U. S. 581, 8 Sup. Ct. 631, 31 L. Ed. 527; Pumpelly v. Green Bay Co., 80 U. S. 166, 177, 178, 20 L. Ed. 557; Laflin v. Chicago, W. & N. R. Co. (C. C.) 33 Fed. 415; 18 American Digest (Cent. Ed.) col. 1277, § 365, and numerous cases there cited.

We do not decide upon which view this cause should be submitted to the jury. Perhaps either would be correct. Any view which would give the town just compensation for its property taken would answer the requirement of the Constitution. It is possible that a verdict based upon the value of the structures and materials and other tangible properties of the town actually taken, together with a special verdict for the damage resulting to parts of property not taken, might solve the situation.

As we hold that the federal proceeding takes hold of the situation ex proprio vigore, and without regard to the state statute or the will of the state (Monongahela Navigation Co. v. U. S., 148 U. S. 312, 341, 13 Sup. Ct. 622, 37 L. Ed. 463), we have no occasion to consider the question based upon the failure of the government to file a copy of the plan of the premises taken as required by section 4 of the Massachusetts act of May 6, 1902; and as we hold that the property was taken by the act of the United States in its own right under its high prerogative of sovereignty and by virtue of its own proceeding, which antedated the assessment of the taxes in question, there is no occasion to consider that aspect of the case.

The decree of the District Court is so far opened as to permit further proceedings not inconsistent with the opinion of this court passed down this day, to the end that the town of Nahant may have just compensation for its property taken.