UNITED STATES v. EIGHTY ACRES OF
LAND IN WILLIAMSON COUNTY,
ILL., et al.

No. 3144.

District Court, E. D. Illinois.

Jan. 28, 1939.

Arthur Roe, U. S. Atty., of Danville, Ill., Carl Feickert, Asst. U. S. Atty., of East St. Louis, Ill., and G. R. Schwarz, Sp. Atty., Dept. of Justice, of Jerseyville, Ill., for the United States.

Frank E. Trobaugh, of West Frankfort, Ill., for defendants.

WHAM, District Judge.

The United States has filed its petition for the condemnation of defendants' land described therein and has filed in the condemnation suit its "Declaration of Taking" on which judgment was entered on June 23, 1938.

The defendants G. W. Kirk and Effie Kirk have filed a motion to dismiss the suit in its entirety and another motion to vacate the judgment on the "Declaration of Taking." The case is now before the court on the two motions.

The motion to dismiss is lengthy but the grounds upon which the defendants chiefly rely may be summarized as follows: (1) The petition does not state facts sufficient to constitute a cause of action. The United States has no authority under the Constitution to condemn lands for the uses and purposes set out in the petition, as they are not public uses and purposes within the constitutional power and authority of the federal government. (2) The Act of Congress (Title 2 of an Act of Congress approved June 16, 1933) upon which this suit is based contains an unlawful and unconstitutional delegation of powers to the President and the acts of the President and his agents pursuant to such delegated power, as set out in the petition, are unlawful and invalid. (3) The Act of Congress upon which this suit is based is unconstitutional. (4) The allegations of the complaint which purport to

show a compliance by the plaintiff with the provisions of the Acts of Congress relied upon are not in accordance with the true facts, but the President and his designated agents have failed to perform those acts under the law which are requisite to the power to exercise the right of eminent domain thereunder in this suit. (5) The lands already taken and sought to be taken in the Crab Orchard Creek Project are not suitable for the purposes and uses alleged in the complaint and taking the lands will cause an economic loss and destruction of a large number of homes and a number of businesses, as well as schools, churches, burial grounds and public improvements, all of a value and importance so much larger than the possible good that can be achieved through the construction and maintenance of the proposed work that this suit is clearly an unlawful and unconstitutional invasion of the rights of the defendants. (6) The uses to which the land is to be put, as alleged in the petition, are not the true and actual uses to which the plaintiff intends to put the land when acquired; that, on the contrary, the land is being taken solely for the purpose of constructing a lake to be used for pleasure only. (7) Plaintiff has made no effort to agree with the defendants upon the compensation to be paid for the land.

The right of the plaintiff to maintain the suit having been attacked by the defendants upon the grounds that plaintiff is without lawful authority to condemn the land in question and is seeking to take the land by right of eminent domain for an unauthorized purpose, the burden was upon the plaintiff to establish its lawful right to maintain its suit. Assuming the burden, the plaintiff, at the hearing, introduced in evidence certified copies of the various Executive Orders and official documents relied upon to give plaintiff the right to bring and maintain this suit under the provisions of Title 2 of the National Industrial Recovery Act of 1933 and the Federal Emergency Relief Appropriation Act of 1935, as set forth in the petition herein, including a letter from the Acting Secretary of Agriculture to the Attorney General informing the latter that it had been determined by the Secretary of Agriculture that it was useful, proper, necessary, advantageous and in the interest of the United States to acquire the lands described in the petition annexed to said let-

ter, including the land of the defendants, for the uses set forth in said letter, that money had been appropriated and allocated to pay for the lands, and requesting the Attorney General to institute condemnation proceedings for the acquisition of said land. Oral testimony was introduced describing in detail the large amount of construction work that had already been done on the project, the work that was then being done and that which remains to be done thereon; also describing the kind, character, condition, topography and area of the land to be taken and affected by the project; also describing Crab Orchard Creek and its characteristics relating to floods and overflows; also stating the objectives sought to be achieved through the construction, maintenance and operation of said project. Evidence was introduced by defendants to show the considerable number of valuable farms and farm homes, also churches, public and private burial grounds, schools, public roads, public utility service lines, coal mines and coal deposits that will be taken, destroyed or made unavailable by the project; also evidence calculated to cast doubt upon the wisdom and feasibility of the project for the purposes and uses set forth in the petition; also to show the probable damages to surrounding territory and the effect of the taking of said lands upon the tax income requisite for the maintenance of local schools and governments.

The face of plaintiff's complaint shows that plaintiff seeks to condemn the land therein described under the provisions of Title 2 of an Act of Congress approved June 16, 1933 (48 Stat. 200 et seq., § 201 et seq., 40 U.S.C.A. § 401 et seq.), commonly known as the National Industrial Recovery Act, an Act of Congress approved April 8, 1935 (49 Stat. 115), commonly known as the Federal Emergency Relief Appropriation of 1935, and also certain specified Executive Orders made pursuant to said Acts and certain specified official acts thereunder of the Federal Emergency Administrator of Public Works and the Secretary of Agriculture of the United States; that pursuant to the foregoing laws and Executive Orders thereunder the Federal Emergency Administrator of Public Works, acting under the direction of the President, prepared a comprehensive program of public works with the concurrence of a Special Board of Public Works, which program included the acquisition of

the land described in the petition, among other lands, for the establishment of and for use in connection with the Crab Orchard Creek Project of the Department of Agriculture, designated the Secretary of Agriculture as the acquiring authority and that money appropriated for the purposes and under the terms of the foregoing Acts of Congress has been duly allocated to the Secretary of Agriculture for the acquisition of said land and the establishment of said project. That pursuant to said authority the Secretary of Agriculture has duly selected for acquisition the land described in the petition for use in connection with said project and that said land is necessary in his opinion: "To provide for the reforestation and forestation of said land; to prevent soil erosion; to aid in flood control; to prevent forest fires; provide for the relief of unemployment by the erection and construction thereon and in connection therewith of useful public works, including truck trails, bridges, dams, ditches and other public works necessary to said project."

The Act of Congress approved June 16, 1933, §§ 201–203, 40 U.S.C.A. §§ 401–403, above mentioned, provides:

Section 201: "(a) To effectuate the purposes of this chapter, the President is hereby authorized to create a Federal Emergency Administration of Public Works, all the powers of which shall be exercised by a Federal Emergency Administrator of Public Works (hereafter referred to as the 'Administrator'), and to establish such agencies, * * * and to utilize such Federal officers and employees, * * * as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure, * * *. The President may delegate any of his functions and powers under this chapter to such officers, agents, and employees as he may designate or appoint. * * *"

Section 202: "The Administrator, under the direction of the President, shall prepare a comprehensive program of public works, which shall include among other things the following: * * * (b) conservation and development of natural resources, including control, utilization, and purification of waters, prevention of soil or coastal erosion, development of water power, transmission of electrical energy, * * * and flood control * * * (c) any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public; * * *".

Section 203: "With a view to increasing employment quickly * * * the President is authorized and empowered, through the Administrator or through such other agencies as he may designate or create, (1) to construct, finance, or aid in the construction or financing of any public-works project included in the program prepared pursuant to section 202 [section 402]; (2) * * * (3) to acquire by purchase, or by exercise of the power of eminent domain, any real or personal property in connection with the construction of any such project, * * *."

Tied in with the 1933 Act and further defining the nature and kind of public works authorized is the Emergency Relief Appropriation Act of 1935 (49 Stat. 115) which contains classification (h) as follows: "(h) sanitation, prevention of soil erosion, prevention of stream pollution, sea coast erosion, reforestation, forestation, flood control, rivers and harbors and miscellaneous projects." Section 1.

It will be observed that with the exception of the prevention of forest fires all purposes for which said land is to be acquired, as set out in the petition for condemnation, correspond with the purposes specified in said laws to accomplish which the Administrator of Public Works, under the direction of the President, is authorized to prepare a comprehensive program of public works. Prevention of forest fires and all the other purposes and uses specified in the petition are covered by clause (c) of Section 202 as will be pointed out hereafter.

The exhibits introduced in evidence by the Government are too numerous to be set out or summarized here. From a careful examination, I am of opinion they make a closed chain of authority for this proceeding from the Congress of the United States which enacted the law through the President and his duly designated agents and representatives, acting for him, to the Attorney General of the United States and the United States Attorney who has filed this suit in this court. That the Acting Secretary of Agriculture could lawfully make the investigation and determination of the public necessity for taking the land here in question, necessary to initiate this proceeding to acquire land by condemnation, is supported by impreg-

nable legislative, administrative and judicial authority. The acts, conclusions and other exercise of powers under the legislation here in question of and by the Acting Secretary of Agriculture were as lawful and effectual as if the Secretary himself had acted. 5 U.S.C.A. §§ 4, 6; Executive Order No. 6596, dated February 9, 1934; Executive Order No. 7465, dated October 6, 1936; In re Jem Yuen, D.C., 188 F. 350, 354; Ex parte Tsuie Shee, D.C., 218 F. 256; Crane v. Nichols, D.C., 1 F.2d 33, 36; Aderhold v. Menefee, 5 Cir., 67 F.2d 345; Anderson v. P. W. Madsen Investment Co., 10 Cir., 72 F.2d 768; Ryan v. United States, 136 U.S. 68, 10 S.Ct. 913, 34 L.Ed. 447.

That the Acting Secretary of Agriculture did make such investigation and determination is sufficiently disclosed by his letter of June 25, 1937, introduced in evidence by the plaintiff in which the Acting Secretary requested the Attorney General to institute suits to acquire by condemnation the lands necessary for the establishment of Crab Orchard Creek Project.

■ In view of the contents of said letter and in absence of convincing evidence to the contrary, it must be held, too, that the plaintiff intends to use the land for the purposes stated in the petition and not for some other purpose. Were it true, however, that the plaintiff does intend to use the lake and surrounding lands sought to be acquired by condemnation for public recreational purposes the plaintiff would not be without constitutional authority to acquire the land for that purpose by condemnation by the very legislation under which it is now proceeding. United States v. Dieckmann et al., 101 F.2d 421, decided January 13, 1939, by the Circuit Court of Appeals of the Seventh Circuit.

The evidence heard by the court disclosed that the Crab Orchard Creek Project will require the acquisition of approximately 35,000 acres of land in a continuous body; that a dam is being constructed across Crab Orchard Creek and the valley of said creek which will impound the water in a lake having a water area of approximately 7,000 acres; that the land north of the creek generally slopes gently or not at all while that to the south is more broken and rugged; that the area of the basin of Crab Orchard Creek above the project is about 115 square miles; that Crab Orchard Creek has a sluggish current and slight fall; that the tributaries from the south have a greater fall and flow rapidly, causing Crab Orchard Creek to overflow the entire valley; that the portion of the land acquired for the project not covered with water will be reforested by planting new trees and improving the present stands of trees; that to aid in preventing soil erosion, check dams will be built at all necessary strategic points and the surface of the soil will be seeded.

It was further shown by the evidence that the project has been a very large employer of labor and will continue to be until the completion of the job in fifteen to eighteen months, thus successfully serving the primary purpose of the emergency legislation; that two million trees were set out during the past season; that two million more will be set out during the next season and three million the following season. Other testimony tended to show that the project will be helpful for the purpose of preventing soil erosion, and for the purpose of flood control; that much of the land, perhaps seventy-five per cent of that being taken, is submarginal land unsuited to successful agriculture; that it can be reclaimed and be made valuable by reforestation and forestation and soil conservation.

■ The testimony of witnesses for the defendants disputed much of the testimony of the government witnesses and tended to throw considerable doubt upon the wisdom of the project from a legislative and administrative standpoint. Nevertheless, the evidence introduced by the defendants, though much of it conflicted sharply with the testimony of the government witnesses, only served to raise a question of fact which this court cannot determine. The evidence on behalf of defendants was not sufficient to destroy the evidence on the part of the plaintiff tending to show that the project in question is reasonably calculated to serve the public uses and purposes set forth in the petition for condemnation and authorized by the statutes upon which said petition is bottomed, nor to establish any course of fraud and deception under the law on the part of those charged with its administration. All questions relating to the wisdom and feasibility of the project, whether it is adapted to the achievement of its purposes and the ultimate determination as to whether the project should be undertaken or abandoned were legislative and administrative questions which this court has no jurisdiction

to pass upon. If the purposes are public and within the legislative powers of Congress, and within the purview of valid existing federal legislation and if the preliminary provisions and requirements of such legislation have been lawfully, complied with, the government has the lawful right to proceed thereunder regardless of any view whatsoever this court may have with reference to the wisdom or feasibility of the particular project. Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; U. S. v. Certain Lands in Town of Narragansett, Rhode Island, C.C., 145 F. 654; U. S. v. Threlkeld, 10 Cir., 72 F.2d 464.

That the uses for which the land is being sought are within the meaning and scope of existing legislation and that such legislation has been complied with by the officials having the responsibility for its administration to the extent preliminarily required for the lawful institution of this suit has already been determined.

Are the uses for which the land is being sought public uses within the legislative power of Congress to authorize?

That reforestation, forestation, prevention of forest fires, flood control and prevention of soil erosion are public purposes it would seem no one can reasonably doubt. For decades the Government has been acquiring, maintaining and administering vast areas as national forests in which all the foregoing objectives have been among its chief aims. To say that these objectives cannot be achieved by virtue of special emergency legislation authorizing a public works program to relieve unemployment would be to cast doubt upon the validity of all of the forestry laws under which the government has been acquiring lands, both by purchase and under its power of eminent domain.

That flood control and the prevention of soil erosion are matters of public interest, national in scope, has been demonstrated through disasters affecting the whole nation. Great floods have been destructive of life, property and soil over large areas. Dust storms have been steadily denuding one part of the continent to the damage, discomfort and possible enrichment of the soil of other parts. Minor floods and local winds and rains are producing soil erosion, impoverishing the soil,

in every state and county in the nation. Soil conservation through prevention of erosion has become a national objective. Flood control has long been such. Undoubtedly, the aforesaid purposes are public purposes and land being acquired by the government to aid and advance such purposes is being acquired for a public use.

The evidence disclosed, however, that this project is being established on a non-navigable stream and its benefits, in most part, will be local in nature. Does this fact remove it from the realm of federal power?

That soil erosion has become a menace to the national welfare and its prevention an objective of national importance has been recognized and declared by the Congress in its soil conservation legislation. 16 U.S.C.A. § 590a et seq. In connection with that work specific statutory authority is given to acquire land by condemnation, though such undertakings will necessarily be local in character. 16 U.S.C.A. § 590a, par. 4. Flood control is included as an essential part of the same legislative program.

That reforestation and forestation is of national interest and has long been considered within the scope of federal power appears from the legislation dealing with our national forests. 16 U.S.C.A. §§ 471–482. Though forests are local in character, authority to acquire lands by purchase and by condemnation for forest preserves is specifically provided for by federal statutes. 16 U.S.C.A. §§ 513–517a; U. S. v. Graham & Irvine, D.C., 250 F. 499; Coggeshall v. U. S., 4 Cir., 95 F.2d 986. The power of eminent domain is being exercised continuously and without challenge in this district and throughout large areas of the country to acquire lands for the establishment of national forests. U. S. v. Griffin, D.C., 14 F.2d 326; Wachovia Bank & Trust Co. v. U. S., 4 Cir., 98 F. 2d 609; U. S. v. 8,557.16 Acres of Land, D. C., 11 F.Supp. 311; U. S. v. Southern Power Co., 4 Cir., 31 F.2d 852; Coggeshall v. U. S., supra. National forests by their nature are local in area and in use, just as the forestry development, the prevention of forest fires and soil erosion and flood control will be in the proposed Crab Orchard Creek Project.

Prevention of forest fires, specified as one of the purposes of the project, has long been provided for by national legislation (16 U.S.C.A. §§ 560–565) and, therefore, comes within the provision of the

above quoted clause (c) of Section 202 of the National Industrial Recovery Act, as one of the legitimate and authorized objectives for which the Administrator of Public Works may lawfully provide in his comprehensive program of public works.

But it is said that under the National Forestry legislation private lands are not acquired by the federal government by condemnation without the legislative consent of the State. That is true and Illinois has legislation authorizing the government to take land by condemnation for forestry purposes. Chapter 143, § 36, Ill. Rev.Stat.1937. Illinois also has legislation that gives the United States power to acquire land by purchase, condemnation, or otherwise for all public buildings whatever, "or for any other purposes of the government." Chapter 143, § 29, Ill.Rev. Stat.1937. This is a broad consent and would seem to provide for the project here in question since the Congress has, by its duly enacted legislation, declared it to be one of the purposes of the federal government. 48 Stat. 200–203; 49 Stat. 115.

In my judgment, however, it is entirely immaterial to the question before the court, as between the plaintiff and the defendants, whether or not the State of Illinois has given legislative consent to the establishment of the project in question. Whether the State of Illinois has the power, under any circumstances, to withstand the right of eminent domain residing in the United States when sought to be exercised against an individual for any proper federal purpose is a question that is not now before the court. The State of Illinois is not a party to this suit and the defendants cannot plead in their own defense any right which the State might have to question the proceedings. Nor is it incumbent upon the plaintiff to allege or prove that the State has given its consent to the acquisition of the land. The right of eminent domain is an attribute of sovereignty possessed by the United States to enable it to perform its proper functions and is not dependent upon state legislation. Town of Nahant v. U. S., 1 Cir., 136 F. 273, 69 L.R.A. 723; Mississippi & R. River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Kohl v. U. S., 91 U.S. 367, 23 L.Ed. 449; U. S. v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; U. S. v. 458.95 Acres of Land, D.C., 22 F.Supp. 1017; U. S. v. 8,557.16 Acres of Land, D.C., 11 F.Supp. 311.

The right to condemn land necessary for the purposes of the Act under consideration is given in the Act itself. Were this not so the government would have statutory authority to exercise the power of eminent domain for the purposes of this statute, assuming it to be valid legislation, under the provisions of the Act of August 1, 1888. 40 U.S.C.A. § 257. In Hanson Lumber Co. v. U. S., 261 U.S. 581, 43 S. Ct. 442, 444, 67 L.Ed. 809, the Supreme Court said: "The authority to condemn conferred by the last-mentioned act [Act August 1, 1888, 40 U.S.C.A. § 257] extends to every case in which an officer of the government is authorized to procure real estate for public uses."

It seems quite clear that though the benefits and effects of the Crab Orchard Creek Project may not actually be felt outside the State of Illinois, its uses, as alleged in the bill of complaint, are not only public uses but have long been recognized and applied as such by federal legislation. Its local character is no more pronounced than that of a local national forest, a local national park, or a local agricultural or scientific experiment station, established to serve the general welfare. Like each of the foregoing examples, the Crab Orchard Creek Project, while localized in its immediate benefits and effects upon natural conditions, is being established for no special class or division or number of persons but for all the people. Each of the uses specified is a part of a national effort to combat an evil or promote an activity that affects the general welfare to an extent that has moved the Congress, as shown by the various Acts pointed out above, to establish a national program for each. Thus, the project here in question becomes an integral part of a national movement affecting the general welfare of the entire people.

If, at the time of the hearing, there existed any serious question as to the constitutional validity of the legislation, in view of the then published decisions of the courts (Greenwood County v. Duke Power Co., 4 Cir., 81 F.2d 986–994; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665–672; Kansas Gas & Electric Co. v. Independence, 10 Cir., 79 F.2d 32–42, 43, 100 A.L.R. 1479; Potomac Electric Power Co. v. U. S., 66 App.D.C. 77, 85 F.2d 243; School District No. 37 v. Isackson, 9 Cir., 92 F.2d 768), the question has been put at rest so far as this court is·

concerned by the recent case of United States v. Dieckmann et al., 101 F.2d 421, decided January 13, 1939, by the Circuit Court of Appeals for the Seventh Circuit. By that decision the constitutionality of the Act was sustained and the delegation of powers to the executive therein was declared valid. That case involved the power of the federal government to acquire by condemnation, under the provisions of Title 2 of the National Industrial Recovery Act, land in the State of Indiana to be used as a "demonstrational recreational park." The power was disputed by the landowner. The court held that the intended use of the land as part of the National Park Service was a public use and the acquisition of land by condemnation for that purpose was within the constitutional power of the United States.

Undoubtedly, the benefits to be derived from the aforementioned demonstrational recreational park will be essentially local. But it will be available to the entire country and a part of the national park program. This fact gives its "public use" a national aspect that brings it within the field of constitutional federal power.

From the foregoing I conclude: (1) The petition states a good cause of action. (2) The plaintiff is seeking to take the land in controversy for the uses set forth in the petition; that such uses are public uses and within the scope of federal power. (3) The law under which the plaintiff is proceeding is constitutional and grants specific power to acquire by condemnation lands necessary to be used for the purposes of the law. (4) That the establishment of Crab Orchard Creek Project for the uses set forth in the plaintiff's petition and the exercise of the power of eminent domain in acquiring lands necessary for said project is within the power and authority of the plaintiff under Title 2 of the National Industrial Recovery Act and supplemental legislation and under the constitution of the United States.

 The seventh ground outlined above in support of the defendants' motion to dismiss, that plaintiff has made no effort to agree with defendants upon the compensation to be paid for the land is without merit. The provisions of the Illinois statute (Chapter 47, § 2, Ill.Rev.Stat.1937) that private property may be taken by condemnation for a public use where the compensation for the property to be taken cannot be agreed upon deals with a substantive right which the United States has by virtue of its own sovereignty, as well as under the federal constitution and legislation enacted thereunder. 40. U.S. C.A. §§ 257, 402. It is only in procedural matters that the practice, pleadings and forms in condemnation suits are required to conform to the state laws. 40 U.S.C. A. § 258; U. S. v. Gideion-Anderson Co. et al., D.C., 16 F.Supp. 627; U. S. v. Crary, D.C., 1 F.Supp. 406–413; In re Condemnations for Improvement of Rouge River, D.C., 266 F. 105, 114, 119. "If inability to agree upon price is pleaded, as here, it is surplusage, and may be disregarded." U. S. v. Gideion-Anderson Co., supra, 16 F.Supp. 628.

The defendants' motion to dismiss must be and is hereby denied.

 Having denied defendants' motion to dismiss the petition and having sustained the right of the plaintiff to maintain this suit for condemnation, the defendants' motion to vacate the judgment on plaintiff's "Declaration of Taking" must likewise be denied. Specific statutory provision has been made for the taking by the United States of title and possession of any land it can lawfully acquire by condemnation, in any proceeding for condemnation in any federal court outside the District of Columbia, in advance of final judgment, by virtue of a judgment upon a duly filed "Declaration of Taking" which conforms to the requirements of the statute. 40 U.S.C.A. §§ 258a–258e. Such "Declaration of Taking" may be filed with the petition for condemnation or thereafter. That the statute is constitutional and valid has been heretofore held by this court in Hessel v. A. Smith & Co., 15 F.Supp. 953. I am now of opinion that the statute is constitutional and valid. An inspection of the "Declaration of Taking" filed in this case and the judgment thereon indicates compliance with all statutory steps required for a valid judgment upon the "Declaration of Taking."

Order will be entered overruling both motions and a similar order will be entered in each suit in connection with the Crab Orchard Creek Project in which similar motions had been filed by Frank E. Trobaugh on behalf of defendants represented by him at the time of the hearing herein on said motions in December, 1938.