### UNITED STATES v. CAREY et al.
#### No. 10398.

Circuit Court of Appeals, Ninth Circuit.

June 19, 1944.

Norman M. Littell, Asst. Atty. Gen., Carl C. Donaugh, U. S. Atty., and James M. Dillard, Asst. U. S. Atty., both of Portland, Or., and Vernon L. Wilkinson, Wilma C. Martin, and Samuel Billingsley Hill, Jr., Atty., Department of Justice, all of Washington, D. C., for appellant.

J. W. McCulloch and Edwin D. Hicks, both of Portland, Or., for appellees.

Before WILBUR and MATHEWS, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

The United States appeals from an order of the district court dismissing a petition for condemnation, vacating a judgment on a declaration of taking, and striking the declaration of taking in the proceeding from the files of the court.

Epitomized, the record reveals the following situation: On June 14, 1935, the United States instituted proceedings to condemn approximately 3474.34 acres of land in Harney County, Oregon. The original petition for condemnation filed by the United States Attorney for the District of Oregon alleged that the proceeding was brought pursuant to the authority of the Act for the Relief of Unemployment through the Performance of Useful Public Works, approved March 31, 1933,[1] and pursuant to Executive Order No. 6724, dated May 28, 1934, authorizing the purchase or rental of land for emergency conservation work, and as authorized by the Act of Congress approved August 1, 1888.[2]

The petition, which included appellees' real property as part of the lands sought

---

[1] 48 Stat. 22, 23. The provisions of this Act were continued in force to and including March 3, 1937, under the authority of Section 14, Emergency Relief Appropriation Act for 1935, 49 Stat. 115, 119, April 8, 1935.

[2] 25 Stat. 357, ch. 728, sec. 1, 40 U.S. C.A. § 257.

to be acquired, further alleged that the Secretary of Agriculture had selected for acquisition the fee simple title to the realty described in the petition subject only to existing public highways and public utility easements, "for use in the construction of useful public works and improvements in connection with Lake Malheur Migratory Waterfowl Refuge,[3] and for such other uses as may be authorized by Congress or by Executive Order."

Concurrently with the petition in condemnation appellant filed a declaration of taking of the fee simple title to the lands described in the petition in accordance with the applicable Act of Congress,[4] and the sum estimated by the acquiring agency of the Government as just compensation for all the property taken, to-wit, $32,227.26, was simultaneously deposited in the registry of the district court for the use and benefit of those having an interest in the acquired property.

Thereafter, on June 14, 1935, the district court entered ex parte a judgment determining that the United States was entitled to acquire the property for the purposes specified in the petition, confirming the passage and vesting of title by and in accordance with the declaration of taking, ordering the delivery of possession of the property taken, and holding open the cause for such other and further orders, judgments and decrees as might thereafter be necessary.[5]

Upon further search and examination of the title to the lands taken it was ascertained that additional persons and entities had or might have had some interest in the property acquired and, accordingly, a supplement to the original petition was filed in the court below on July 19, 1935, making such other parties defendants in the condemnation proceeding. Thereafter summons issued in the cause.

The twenty parcels of property described in the original petition, in the declaration of taking and in the decree thereon, which aggregated the total acreage condemned, are specified lots located along what is known as the Neal survey line around Lake Malheur, Mud Lake and the Narrows,[6] and in such instruments there appears in amplification of the property condemned the following phrase "and together with all right, title, claim and interest of the owners of said tracts to land lying within the Neal survey lines purporting to surround Malheur and Mud Lakes, and the Narrows."

Throughout the pendency of the proceedings in the court below defendants and claimants in various parcels of the lands taken appeared and petitioned to withdraw their shares of deposits in the court's registry, and the amounts withdrawn and paid to such claimants by court order to March 25, 1943 aggregated $30,836.83, leaving a balance in registry at such time of $1,390.43. Many of those whose land was taken, in addition to accepting their respective shares of the deposited monies as compensation for the taking of their property, executed confirmatory deeds to the United States. Other defendants having or claiming an interest in the lands taken, who failed to timely appear, were subjected to default orders duly entered in the district court.

As the result of agreed settlements or defaults in the cause most of the issues were disposed of save those arising by the owners, appellees herein, of certain undivided interests in Parcels Numbers 16 and 31a, involving approximately 224.05 acres.

In September, 1935, the appellees filed a motion in the court below to require the United States to make more definite and certain that portion of the petition for condemnation concerning those lands within the Neal survey lines and in front of Tracts Numbers 16 and 31a which the Government sought to acquire. This motion raised numerous questions of riparian rights and titles to lands in Malheur Lake. To settle such issues the United States instituted an independent suit in the district court to quiet title.

On January 25, 1937, prior to this court's decision in the quiet title litigation, United States v. Otley, supra, upon stipulation of the affected parties, orally made in open court in the court below, appellees' undivided interests in Tracts Numbers 16 and 31a of the lands taken were severed and

---

[3] President Theodore Roosevelt by Executive Order dated August 18, 1908, reserved this area for the breeding and protection of migratory birds. United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267; United States v. Otley et al., 9 Cir., 127 F.2d 988.

[4] 46 Stat. 1421, 40 U.S.C.A. § 258a.

[5] cf. City of Oakland v. United States, 9 Cir., 124 F.2d 959.

[6] See United States v. Oregon and United States v. Otley, supra.

leave was given the Government to file an amended petition in the proceedings therein as against those interests, excluding therefrom any riparian rights and any portions of the property lying inside the Neal survey lines. Shortly thereafter amended petitions were filed amplifying in greater detail the averments in the original pleading of the authority for and the purpose of the proceeding and further alleging that the property set forth in the original petition as Tracts 16 and 31a did not include any riparian rights which appellees (defendants in the court below) may have claimed as appurtenant to their tracts, or any lands or waters inside the Neal survey lines or as meander lines of "Malheur Lake", as shown by a specified official map on file with the Surveyor General.

On December 4, 1940, William J. George, Anna Carey and Eliza O. Shoemaker, owners of an undivided three-ninths interest in Parcel Number 16, and Gordon T. Carey, owner of an undivided one-half interest in Parcel Number 31a, four of appellees herein, jointly filed a motion to vacate the judgment on the declaration of taking and to dismiss petition of condemnation filed June 14, 1935, upon the ground that it failed to state sufficient facts to constitute a cause of action and, further, that the petition did not state sufficient facts to give the district court jurisdiction to "make" the judgment on the declaration of taking and that by reason thereof the court lacked jurisdiction in the "cause."

On September 28, 1942, the pending motion to vacate and dismiss upon notice was heard by the district judge and from his order entered that day dismissing the petition in condemnation, striking the entire declaration of taking from the files of the court and vacating the judgment thereon this appeal followed.

We think the learned district court erred in making and entering the order and judgment dated September 28, 1942.

█ The petition and the declaration of taking by which title vested in the United States alleged that the proceedings were brought under the beforementioned Act of August 1, 1888, and showed that the appropriate Governmental authorities had au-thorized and initiated the proceeding in the proper district court of the United States. Thus the jurisdiction of the court over the subject matter was conferred by a valid Act of Congress and its exercise duly motivated by an adequate pleading and a statutory instrument filed in court, and although amendable defects may have arisen in the proceedings, the district court could not be thereby deprived of its Congressionally conferred jurisdiction over the cause.[7]

█ The court having acquired jurisdiction undoubtedly had power to permit amendments to the petition for condemnation for greater definiteness and certainty and so as to make provision for just compensation for any interest in the property taken by the United States.[8]

█ Appellees contend, however, that the institution of the condemnation proceedings was not authorized by Congress. They argue that Congress has not authorized the acquisition of privately-owned lands for the purpose set forth in the petition filed in the district court. We find no merit in this contention. Section 1 of the Unemployment Relief Act of March 31, 1933, 48 Stat. 22, provides as follows:

"That for the purpose of relieving the acute condition of widespread distress and unemployment now existing in the United States, and in order to provide for the restoration of the country's depleted natural resources and the advancement of an orderly program of useful public works, the President is authorized, under such rules and regulations as he may prescribe and by utilizing such existing departments or agencies as he may designate, to provide for employing citizens of the United States who are unemployed, in the construction, maintenance and carrying on of works of a public nature in connection with the forestation of lands belonging to the United States or to the several States which are suitable for timber production, the prevention of forest fires, floods and soil erosion, plant pest and disease control, the construction, maintenance or repair of paths, trails and fire-lanes in the national parks and national forests, and such other work on the public domain, national and State, and Government reservations incidental to or

---

[7] See Chappell v. United States, 160 U.S. 499, 16 S.Ct. 397, 40 L.Ed. 510; United States v. Nudelman et al., 7 Cir., 104 F.2d 549, certiorari denied 308 U. S. 589, 60 S.Ct. 115, 84 L.Ed. 493.

[8] See United States v. Gettysburg Elec. R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Goodman v. Ft. Collins, 8 Cir., 164 F. 970.

necessary in connection with any projects of the character enumerated, as the President may determine to be desirable: Provided; That the President may in his discretion extend the provisions of this Act to lands owned by counties or municipalities, and to lands of private ownership, but only for the purpose of doing thereon such kinds of cooperative work as are now provided for by Acts of Congress in preventing and controlling forest fires and the attacks of forest tree pests and diseases and such work as is necessary in the public interest to control floods. * * *".

Section 2 of the same Act in pertinent part provides:

"For the purpose of carrying out the provisions of this Act * * * the President, or the head of any department or agency authorized by him to construct any project or to carry on any such public works, shall be authorized to acquire real property by purchase, donation, condemnation, or otherwise, * * *."

On May 28, 1934, the President under the authority of the above Act issued Executive Order No. 6724 authorizing the Secretary of Agriculture to expend sums for the purchase or rental of lands suitable for proper refuges for migratory birds and other wild life which would, in addition to furnishing such refuge, provide protection for such lands from forest fires, floods, soil erosion, and plant pests and diseases, and in restoring depleted natural resources and provide employment for unemployed citizens of the United States.

The works intended to be done on the acquired property, as generally stated in the original petition and in the declaration of taking and amplified by the amended petitions filed by permission and without objection in the court below, included the improvement of the existing Lake Malheur Migratory Waterfowl Refuge, the construction of seventy-five miles of additional truck trails around the exterior boundaries of the Lake Malheur Reservation for patrol and fire prevention purposes, the erection of lookout towers, the placing of ditches and embankments for water control and the planting of several thousands of acres of trees. Thus the purposes of the acquisition alleged in the original petition "for use in the construction of useful public works and improvements in connection with the Lake Malheur Migratory Waterfowl Refuge, and for such other uses as may be authorized by Congress or by Executive Order," and the amplification of detail found in the amended petitions is clearly authorized by the provisions of the Act, and in the accomplishment of such purposes the taking of privately-owned lands is sanctioned by the legislation.

Objection is made by appellees to the form of the petition for condemnation. It is contended that as it did not conform to the practice, pleadings, or proceedings prescribed by the laws of Oregon, as required by T. 40 U.S.C.A. §§ 257, 258, and Rule 81, subsection (a) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, no valid proceeding was pending at the time the Government took title to the land. Particular complaint is urged to the Government's failure to specify the parties defendant as required by provisions of the Oregon statutes and, further, that the petition failed to contain a statement of facts constituting a cause of action.

Section 1 of the Act of August 1, 1888, supra, provides that in every case in which the Secretary of the Treasury or any other officer of the Government has been or shall be authorized to procure real estate for * * * public uses he shall be authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so. Projects instituted for the prevention of unemployment, conservation of natural resources, the prevention of soil erosion, reforestation, and protection and preservation of migratory birds and other wild life are for public purposes and use.[9]

The petition under which the United States commenced these proceedings, as adverted to earlier in this opinion, alleged the statutory authority for the taking, with a description of the lands taken, and a statement that in the opinion of the Secretary of Agriculture it was necessary, advantageous and in the interest of the Government to acquire the described lands by judicial proceedings as authorized by the Act of August 1, 1888. All parties known to have had any interest in any of the lands taken, including three of the appellees, were

9 United States v. State of Montana, 9 Cir., 134 F.2d 194, certiorari denied 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720; United States v. Dieckmann et al., 7 Cir., 101 F.2d 421.

450

in the body of the petition named as defendants, and it was further averred in the petition that all others having or claiming any interest in any of the tracts of lands taken were also made defendants to the end that they would come into court and make assertable claims to the lands taken or to the money that was to be deposited as estimated compensation for the taking. We think the petition in the absence of any timely objection, and none is shown by the record, adequately complied with the practice in the State of Oregon and proceedings in eminent domain, as above stated.

The failure to specify in the title of the cause in the original petition the defendants in the condemnation proceeding did not warrant a dismissal of the proceedings. Appellees, the sole objectors to this alleged defect, were all named as defendants in the title of the cause in the amended petition for condemnation. They raised no objection to the form of the original or amended petitions but, instead, filed their answers in which no mention of the alleged defect was made. Whatever imperfection or inartistry of pleading the Government may have produced by a failure to meticulously comply with the provisions of the Oregon statutes, no injury has resulted to any of the appellees. The error, if any, was unsubstantial and harmless.

■ It is finally argued by the appellees that as this "abortive proceeding" had been pending for more than seven years, the district court was authorized to enter the order of September 28, 1942, for lack of prosecution.

The record before us fails to reveal in what manner the Government neglected to effectually prosecute the proceeding in the district court. On the contrary the record indicates that the Government was at all appropriate times prepared for trial as to the issues raised by appellees, but that because certain of appellees were not financially able to proceed the trial was postponed. In addition, the transcript of docket entries reflects numerous items which show a continuation of activities by the Government and owners and claimants of the lands involved since the institution of the proceedings. No lack of diligence on the part of the United States sufficient to justify dismissal has been shown.

■ Moreover, when pursuant to the provisions of the Act of February 26, 1931,[10] the United States on June 14, 1935 filed the declaration of taking and deposited the estimated compensation for the taking in the registry of the district court, title to the lands described in the declaration of taking vested in the United States [11] and could not be divested, under the record before us, by a dismissal of the petition for condemnation. Nor under the record before us could the declaration of taking or the judgment thereunder dated June 14, 1935, be vacated and held for naught.

The order of the district court dated September 28, 1942, is reversed and the proceeding remanded to the district court.

---

[10] Act of Feb. 26, 1931, ch. 307, sec. 1, 46 Stat. 1421, 40 U.S.C.A. § 258a.

[11] United States v. Sunset Cemetery Co., 7 Cir., 132 F.2d 163; United States v. 150.29 Acres of Land, etc., 7 Cir., 135 F.2d 878.