234 F.2d 410
 UNITED STATES of America, Petitioner-Plaintiff-Appellee,
v.
44.00 ACRES OF LAND, MORE OR LESS, SITUATE IN THE TOWN OF GREECE, COUNTY OF MONROE, State of New York, and John H. Odenbach et al., Defendants,
Commissioners James P. B. Duffy, Donald J. Corbett and Joseph E. Silverstein, Appellants.
 No. 287.
 Docket 23895.
 United States Court of Appeals Second Circuit.
 Argued May 11, 1956.
 Decided June 12, 1956.
 
 On December 27, 1951 the United States commenced this action for condemnation of 44.00 acres of land in Monroe County, New York for military purposes, as authorized by Acts of Congress, and obtained an order of immediate possession. On June 11, 1952 the Government filed a Declaration of Taking, pursuant to 40 U.S.C.A. § 258a, in which it estimated the value of the condemned land to be $300,000, and it deposited this sum with the district court. On December 4, 1952, after the appellant landowner had moved to set aside the Declaration, the Government filed an amended Declaration of Taking in which it increased the estimate of the value of the property to $500,000 and deposited an additional $200,000 with the court. On January 28, 1953, the district judge granted the appellant's motion to vacate and set aside the Declaration of Taking. On May 12, 1953 the Government filed a second Declaration of Taking in which it estimated the value of the condemned land to be $500,000. The trial judge denied appellant's motion to dismiss this Declaration.
 On July 27, 1953 the trial judge appointed three Commissioners to determine just compensation for the taking of the property. The Commission held extensive hearings and filed its first report on December 23, 1954 in which it determined just compensation to be $1,488,528.35 ($1,367,250 for the value of taking; $66,300 for severance damages; and $54,978.35 for the fair rental value from July 11 to December 27, 1951). The trial judge directed the matter to be returned to the Commissioners for a more detailed statement of their findings of fact and conclusions of law. The second report of the Commissioners was filed on February 7, 1955 and, after hearing the objections thereto, the trial judge modified the Commission's finding of just compensation by reducing the amount to $760,778.35. The judge uttered an opinion that reads as follows:
 "This proceeding involves property with buildings which were constructed early in World War II for the fabrication of barges for war use. After World War II, subsequent to a temporary use for an industrial purpose, the main structure was converted at substantial expense by filling in the ship canal and by installing flooring and grain bins to make it usable for grain storage. After the start of the Korean War the Government appropriated it for use in the manufacture of war material. Pertinent documents in evidence fairly demonstrate that Odenbach Holding Corporation on June 15, 1950 purchased the identical property (plus about 75 acres of adjoining unimproved land) for $175,000, and that the condemnee on October 10, 1951 (less than three months prior to the taking by the Government on December 27, 1951) purchased the identical property for about $365,000 from Odenbach Holding Corporation. The purchase price involved in these sales had little, if any, influence on the award made by the Commissioners. They have determined just compensation for the taking to be $1,488,528.35.
 "It was proper to consider with other relevant factors evidence as to reproduction cost, less depreciation. The condemnee in his brief submitted to the Commissioners stated, `It is clear that the evidence in this case establishes the propriety of but one method of valuation — that which determines the value for raw land, to which there is added the value of improvements as determined by reproduction cost new, less applicable depreciation appraisal.' Apparently the condemnee thought that his theory of the sole method of valuation had prevailed before the Commissioners. He stated in the brief submitted opposing the objections to the Commissioners' Report, `Absent other tests for determining market value, a buyer and seller would determine the price of a piece of property by reference to the cost of reproducing it, less depreciation existing at the time of taking.' And further, as stated in the brief, `On the whole of the Report there cannot be the slightest doubt that this is the only appropriate method for determination of just compensation.' The condemnee's case before the Commissioners was geared to that theory. He produced as his experts on the question of valuation one real estate broker who testified as to the value of the bare land without improvements. This witness frankly conceded that he was not qualified to testify as to the value of the property including improvements. The other witness was a qualified engineer who testified as to reproduction cost of the improvements, less physical depreciation. His net figure for the value of the improvements (deducting nothing for obsolescence or economic or functional depreciation, for he said there was none) was $2,055,400. This engineering witness had never bought or sold real estate. He made no attempt to testify as to market value of the property, nor had he attempted to determine whether there had been any sales of comparable property. He relied on his own experience for his conclusion that this type of plant was not generally on the market. The total result adopting the condemnee's theory of valuation was $2,423,010 (more than two million dollars in excess of the purchase price paid by the condemnee for the identical property less than three months prior to the taking by the Government).
 "Despite the statement of the Commissioners that they took into consideration all pertinent factors in arriving at their determination of fair market value, I think the amount of the award demonstrates that they erroneously arrived at their conclusion by adopting the condemnee's theory of valuation, viz., that there was no going market for the property and that land value plus reproduction cost, less physical depreciation was the sole guide. I think a mistake has been made and that the findings of the Commissioners as to fair market value are clearly erroneous, and do not have to be accepted under Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. Stubbs v. Fulton National Bank [5 Cir.], 146 F.2d 558. Beckley National Bank v. Boone, [4 Cir.], 115 F.2d 513, 515.
 "Value is the thing to be determined. Neither reproduction cost nor that less depreciation is the sole guide. There must be a reasonable judgment having its basis in a proper consideration of all relevant facts. Standard Oil Co. [of New Jersey] v. Southern Pacific Co., 268 U.S. 146, 156 [45 S.Ct. 465, 69 L.Ed. 890].
 "`Original cost is well termed the "false standard of the past" where, as here, present market value in no way reflects that cost. So with reproduction cost, when no one would think of reproducing the property.' United States v. Toronto [, Hamilton & Buffalo] Navigation Co., 338 U.S. 396, 403 [70 S.Ct. 217, 221, 94 L.Ed. 195].
 "`It is not difficult to understand the modern apprisers skepticism of land value plus structural cost as a measure of the market value of improved real estate. Such a figure would be acceptable only on the assumption that the buyer of the property would want to erect a substantially identical structure in case the existing one were not there. The market value of the mere land is a value that can be availed of by the owner only by erecting on it that type of building which is now best adapted to it. But if the existing building is not of that type — which is almost sure to be the case in this dynamic age, unless the structure is very new — then the improvement does not enhance the value of the whole property by the amount of the reproduction cost.' Orgel — Valuation Under Eminent Domain. (1953 Edition) Sec. 188.
 "There is no substantial evidence to justify the conclusion that at the time of the taking there existed the prospect of a demand or need within the reasonably near future for such structures for heavy industrial use, so as to affect its market value. Olson v. United States, 292 U.S. 246 [54 S.Ct. 704, 78 L.Ed. 1236].
 "Based upon consideration of all the pertinent factors having a bearing on fair market value, including comparable sales, recent sales of the identical property, capitalization of income, and reproduction cost less physical depreciation, obsolescence, and economic or functional depreciation, the determination of the Commissioners as stated in their report and findings should be modified as follows:
 "1) Just compensation for the taking of the property described in the Commissioners' Conclusions of Law designated (A) is determined to be $700,000, which is found to be the fair market value of the property.
 "2) Damage to remaining lands caused by the taking is determined to be $25,000.
 "3) Fair rental value from July 11, 1951 to December 27, 1951 is determined to be $42,000 — from which should be deducted $6,221.65, the amount received by the condemnee or his predecessor in title as rent for the period July 11, 1951 to December 27, 1951 — making a net rental value of $35,778.35.
 "Making a total of $760,778.35, which is determined to be just compensation for the entire taking."
 On a motion to amend his judgment, the judge uttered an opinion reading as follows:
 "The question presented by this motion to amend the judgment of April 14, 1955, is what interest is due on the total award of $760,778.35. That question involves what credits against interest the Government is entitled to by reason of deposits made in the registry of this court. Deposits were made as follows:
 June 11, 1952 ...... $300,000.00
 December 4, 1952 ... 200,000.00
 December 28, 1953 .. 142,000.00
 March 7, 1955 ...... 118,778.35
 ___________
 Total ............ $760,778.35
 In addition the plaintiff deposited on March 7, 1955, the sum of $80,888.28 as interest.
 "All of the funds so deposited were, at all times after the respective deposits were made, available for withdrawal by or distribution to the parties entitled thereto. The order of this Court holding the first Declaration of Taking invalid did not affect the availability for withdrawal or distribution of the deposits made June 11, 1952 and December 4, 1952.
 "The judgment should be amended to include interest at 6% per annum on the following sums for the following periods to reflect credits due the Government on account of sums so deposited:
 Interest on $760,778.35 from December 27, 1951, to June 10, 1952, inclusive;
 Interest on $460,778.35 from June 11, 1952, to December 4, 1952, inclusive; Interest on $260,778.35 from December 5, 1952, to December 27, 1953, inclusive;
 Interest on $118,778.35 from December 28, 1953, to March 7, 1955, inclusive.
 "This determination is made without prejudice to the right of the condemnee to claim additional interest if it shall be judicially determined that funds on deposit have been illegally or improperly withheld by the Government by reason of pending claims of the Government against the funds on deposit. This determination in so far as it is made without prejudice is so made at the request of the condemnee, and is not to be construed as any indication of the view of the Court as to the validity of any claim which may hereafter be asserted."
 On February 15, 1955, the district judge entered an order fixing the compensation of the Commissioners as follows:
 James P. B. Duffy, Chairman .. $4,000
 Joseph E. Silverstein ........ 3,500
 Donald J. Corbett ............ 3,500
 This order was re-affirmed on March 31, 1955.
 The defendant landowner and the Commissioners appeal.
 Frederick Wiedman, Rochester, N. Y., Gallop, Climenko & Gould, New York City, Jesse Climenko and Arthur S. Friedman, New York City, of counsel, for defendant-appellant.
 James P. B. Duffy and Donald J. Corbett, Rochester, N. Y., for appellants.
 Perry W. Morton, Asst. Atty. Gen., John O. Henderson, U. S. Atty., Buffalo, N. Y., Roger P. Marquis and Harold S. Harrison, Attys., Dept. of Justice, Washington, D. C., for petitioner-plaintiff-appellee.
 Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 I. The Defendant Landowner's Appeal.
 
 
 2
 1. Rule 71A(h), together with Rule 53(e) (2) gave the judge authority to reject, in part, a finding of the Commissioners if "clearly erroneous" and to modify their award accordingly. He was not obliged to, although he had discretion to, remand their report to the Commissioners for a revised finding.
 
 
 3
 2. It is obvious to us, and it was to the judge, that, in valuing the property, the Commissioners (despite their statement that they took all pertinent factors into consideration) relied primarily on reproduction-cost-new less depreciation. The judge, in his excellent opinion, properly rejected such a valuation. We think his revised valuation is amply supported by the evidence, and that it is not "clearly erroneous."
 
 
 4
 We think it immaterial that, in revising the Commissioners' findings as to "severance" and rental values, the judge did not explicitly state that they were clearly erroneous. We think his revised findings are amply supported by the evidence.
 
 
 5
 3. On June 11, 1952, when the Government filed the first Declaration of Taking, it deposited $300,000 with the district court. On December 4, 1952, when the Government amended its Declaration of Taking, it deposited another $200,000 with the court. On January 28, 1953 the district judge vacated the Declaration of Taking on the ground that the original estimate of $300,000 as the value of the land taken was made in bad faith; 110 F.Supp. 168. The evidence showed that the Government had previously estimated the property to be worth $500,000 and had prepared a Declaration of Taking based on this estimate which was never filed. Instead, the Government filed the Declaration of Taking which contained an estimate of only $300,000 as the value of the property taken. The trial judge, in making his order vacating the Declaration, disregarded the amended Declaration increasing the estimate of value to $500,000, because the Government had not obtained his permission to make the amendment.
 
 
 6
 The $500,000 deposited on December 4, 1952 with the court by the Government remained so deposited. On May 12, 1953 the Government filed a second Declaration of Taking containing an estimate of just compensation in the sum of $500,000. Appellant's motion to vacate this Declaration of Taking was denied. On December 28, 1953 the Government deposited another $142,000. On March 7, 1955, after the final order of the district court was rendered, the Government deposited an additional $118,778.35.
 
 
 7
 The trial judge awarded appellant interest in the following amounts:
 
 
 8
 Interest on $760,778.35 from December 27, 1951 (the date on which the Government entered into possession) to June 10, 1952.[1]
 
 
 9
 Interest on $460,778.35 from June 11, 1952 to December 4, 1952.[2]
 
 
 10
 Interest on $260,778.35 from December 5, 1952 to December 27, 1953.[3]
 
 
 11
 Interest on $118,778.35 from December 28, 1953 to March 7, 1955.[4]
 
 
 12
 The amount allowed by the court below as interest was calculated to the time at which the Government deposited the various amounts with the court. No interest was allowed with respect to the amounts so deposited. Under the statute, 40 U.S.C.A. § 258a, interest is not to be allowed on so much of the value of the condemned property as has been deposited with the district court by the Government pursuant to its filing of a Declaration of Taking.
 
 
 13
 Appellant contends, however, that he is entitled to additional interest on $300,000 from July 11, 1952 to December 4, 1952, and on $500,000 from December 4, 1952 to May 12, 1953 (the date of filing of the second Declaration of Taking). He rests his contention on the fact that the first Declaration of Taking was vacated by the district court and that, therefore, the statute did not absolve the Government from paying interest on the amounts deposited pursuant to the First Declaration of Taking and before filing of the second Declaration.
 
 
 14
 However, the district court had no power to set aside the first amended Declaration of Taking, and its order so doing is void.[5] We may concede, arguendo, that a court has jurisdiction to vacate a Declaration of Taking where, contrary to the implied requirements of the statute, the estimate of the value of the condemned property is made by the Government in bad faith. But here the estimate was raised to an amount which the evidence shows to have been arrived at in good faith. Indeed, the court later refused to set aside a Declaration with the same estimate. It is true that the Government did not secure the permission of the court before it amended its Declaration of Taking by increasing the estimated value of the property. It is likewise true that orderly procedure requires that it obtain leave of the court to make such an amendment. But the court should have granted the Government such leave, since the amendment could not possibly prejudice the land owner. United States v. 1,997.66 Acres of Land, More or Less, etc., 8 Cir., 137 F.2d 8; United States v. Certain Land in Centerline, D.C.E.D.Mich., 47 F.Supp. 320. Before granting the motion to vacate the Declaration, the court was well aware of the fact that the Government had amended it. Yet it chose to rest its decision vacating the Declaration on the unamended Declaration of Taking with its lower estimate of value. We think the court erred in thus ignoring the amended Declaration and, since there was no other allegation that the Government acted without statutory authority, the court was without power to vacate and set aside the Declaration of Taking as amended.
 
 
 15
 The money deposited by the Government was at all times available for distribution at the discretion of the trial court. This was true during the interim between the dismissal of the first Declaration of Taking and the filing of the second. Before the dismissal of the first Declaration, appellant requested the court to distribute the fund but later withdrew his request. The Government could not appeal the erroneous order of dismissing the first Declaration since that order was not appealable.[6] Hence, we think applicable the many cases which hold that a deposit of a fund pursuant to the filing of a Declaration of Taking under 40 U.S.C.A. § 258a, prevents the accrual of further interest on the amount deposited.[7] We think the judge's award of interest was correct.
 
 
 16
 II. The Commissioners' Appeal.
 
 
 17
 The Commissioners inspected the property on three different days; they spent 38 days hearing testimony and arguments which filled 4055 pages; they received 113 exhibits in evidence; they devoted considerable time to examining the record and the exhibits and spent 25 days conferring and preparing their report. Furthermore, they spent two weeks in preparing detailed findings of fact and conclusions of law at the request of the district court. For this labor, the district court allowed a total of $11,000 as compensation.
 
 
 18
 The judge's awards to the Commissioners are too low. Two of the Commissioners are practicing attorneys, and the third is an insurance broker. We think that each of the Commissioners should receive $10,000, and that the Chairman should be reimbursed for his expenses.
 
 
 19
 Affirm on Odenbach's appeal; modified on the Commissioners' appeal.
 
 
 
 Notes:
 
 
 [1]
 This gave the appellant interest on the full amount of the ultimate judgment from the date of the Government's possession to the date it first deposited money with the court
 
 
 [2]
 This gave appellant interest on the difference between the ultimate judgment of $760,778.35 and the $300,000 on deposit during this period
 
 
 [3]
 This gave appellant interest on the difference between the ultimate judgment of $760,778.35 and the $500,000 on deposit during this period
 
 
 [4]
 This gave the appellant interest on the difference between the ultimate judgment of $760,778.35 and the $642,000 on deposit from December 27, 1953 until the remaining undeposited part of the final judgment was deposited on March 7, 1955
 
 
 [5]
 United States v. Hayes, 9 Cir., 172 F.2d 677, 679; United States v. Carey, 9 Cir., 143 F.2d 445, 448-450; United States v. 165.1978 Acres of Land, etc., D.C.E.D. N.Y., 61 F.Supp. 362; cf. United States v. 6.74 Acres of Land, etc., 5 Cir., 148 F.2d 618; United States v. Certain Real Estate, etc., 6 Cir., 217 F.2d 920; United States v. Eighty Acres of Land, D.C.E.D. Ill., 26 F.Supp. 315, 319-320
 
 
 [6]
 Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911; United States v. Hayes, 9 Cir., 172 F.2d 677, 679, 682; McKendry v. United States, 9 Cir., 219 F.2d 357
 
 
 [7]
 See e. g., United States v. 53¼ Acres of Land in, etc., Brooklyn, 2 Cir., 176 F.2d 255, 258; United States v. City of New York, 2 Cir., 186 F.2d 418; United States v. Miller, 317 U.S. 369, 381, 63 S. Ct. 276, 87 L.Ed. 336
 
 
 
 20
 CLARK, Chief Judge (concurring).
 
 
 21
 I concur entirely in the opinion on the landowner's appeal; and since the matter is not of permanent significance, I have finally determined to concur in the result on the commissioners' appeal. I agree that the amounts awarded the commissioners by the district judge were quite low for professional services and that we ought not to penalize the commissioners because their erroneous conception of governing principles robbed their work of much of its effectiveness — though it is difficult to see why they persisted after the very direct admonition implicit in the judge's return of the matter to them for more adequate findings. But having in mind the range of discretion vested in the judge and the amounts payable in comparable cases in New York and in the T. V. A. condemnations, I think a doubling of the awards made below would have been quite generous. I fear that so substantial a cost of proceedings so considerably abortive will prejudice the future use of the often convenient state practice of valuation by commissioners in governmental taking of private property. For under F.R. 71A (h) either party may claim trial by jury, and the judge has only a very limited power (which he will naturally be hesitant to exercise) to override such claim.