DuReee, Judge,
delivered the opinion of the court:
This is an action to recover for the taking of real property without just compensation. The plaintiffs have been awarded compensation by the United States District Court for the Eastern District of Virginia based on the value of the land on September 11, 1958, the date of the filing of a declaration of taking by the defendant. But they allege that the taking really occurred on February 1, 1960, by which date the value of the property had increased considerably because the area had been rezoned by county authorities.
In 1950, the Congress authorized the construction, development and operation of a public airport to service the National Capital area. The site chosen for the so-called Dulles International Airport is in Fairfax County, Virginia, near the town of Chantilly. In January 1958, the United States instituted an action in the district court to acquire *741 fee simple title to those lands in Fairfax and Loudoun Counties which were deemed necessary for the airport development. The complaint relied for the taking on the authority of the act of August 1, 1888, 25 Stat. 357, 40 U.S.C. 257; the act of September 7, 1950, 64 Stat. 770; and the Supplemental Appropriation Act approved August 28, 1957, 71 Stat. 426. Also in January 1958', the district court entered an order granting the United States possession of the lands which were the subject of the condemnation action. The plaintiffs, as defendants in that suit, filed an answer denying that the taking was for a valid public purpose and asserting that the two parcels of land which they owned were not susceptible of a taking for the purposes set forth in the Government’s complaint.
The parcels of land owned by plaintiffs at the time the condemnation action was commenced were within the proposed exterior boundaries of the airport. Situated thereon was a house known as “Leeton” built by an uncle of Kobert E. Lee in the early days of the Eepublic and of some historic interest. Although the exterior was authentic, the interior was of fairly recent construction. Nearby, but on other lands, another house of historic interest known as “Sully” was located.
The district court vacated its original order of possession in July 1958 and made the right of the United States to take possession contingent on the filing of a declaration of taking. This the United States did on September 11, 1958, at the same time depositing with the court the estimated just compensation for the lands taken. The value of plaintiffs’ lands was estimated at $75,000 and this amount was later withdrawn from the court by them. Declaration of Taking No. 15 cited the statutes relied on in the complaint and other statutes including the Declaration of Taking Act, 46 Stat. 1421, 40 U.S.C. 258a.
The trial of the condemnation suit as it applied to these plaintiffs was set for April 1960. However, on September 1, 1959, the first session of the 86th Congress approved Public Law 86-220, 73 Stat. 451, which was based on the premise that title to the parcels of land previously owned by the plaintiffs had devolved to the United States and which gave the *742 United States tlie power to designate any public or private corporation in Virginia as the proper agency to dismantle “Leeton” and to preserve “Sully”, it having been decided that “Sully” was an appropriate site for preservation but that “Leeton” was not. Accordingly, the Fairfax County Park Authority was designated as the qualified organization to acquire the buildings and to conduct the preservation, salvage, and removal operations. On February 1,1960, the park authority assumed physical control of “Leeton” and began razing the building. On April 26, 1960, the court-appointed commissioners filed their valuation report advising that the total fair value of plaintiffs’ parcels of land and improvements was $79,250, or $4,250 more than the amount deposited by the United States at the time of the filing of the declaration of taking. It appears that at the time set for trial in the district court the proceedings were restricted to an inquiry into the amount of compensation. It further appears that if there were genuine issues created by the complaint and answer in the action in district court, no final judgment thereon has been rendered.
The petition asks us to determine that the taking of the two parcels of land did not occur until February 1, 1960, when the defendant’s designees physically entered upon the premises. To so hold we would have to decide that the condemnation proceedings, including the declaration of taking, were invalid and ineffective to confer title on the United States. Such a holding would contain the implicit determination that the act of Congress of September 1, 1959, is a nullity because it authorized the United States to dispose of something which it did not own.
Plaintiffs compute the value of the lands involved, zoned for industrial purposes on February 1, 1960, at a figure in excess of $3 million. They also include in their damages prayer the value of “Leeton” which, of course, no longer exists. If the position of the defendant, namely, that the United States acquired title to plaintiffs’ lands by virtue of the declaration of taking of September 11, 1958, is correct, then the matter of just compensation can be, and apparently has been, settled in the district court.
*743 The defendant’s position is based on the Declaration of Taking Act, supra. The text of the act is set forth in the margin[1] and provides, in substance, that in any condemnation action; the Government may, contemporaneously with the filing of the petition or any time prior to judgment, file a declaration of taking covering the lands described in the *744 petition. The declaration must contain certain prescribed statements and descriptions and if, at the time the declaration is filed the United States deposits the estimated compensation for the lands with the court, title in fee simple absolute or some lesser estate, if requested, will then vest in the United States. At the same time, the right to immediately receive the estimated compensation vests in the landowner.
It has been repeatedly held that under the statute title to the realty vests in the United States immediately upon the filing of a declaration of taking and the payment into the court of the estimated compensation. U.S. v. Hayes, 172 F. 2d 677 (2nd Cir. 1949); U.S. v. 150.29 Acres of Land, More or Less, in Milwaukee County, Wis., et al., 135 F. 2d 878 (7th Cir. 1943); U.S. v. Sunset Cemetery Co., 132 F. 2d 163 (7th Cir. 1942). It has also been held that the Act does not work an unconstitutional deprivation of property without due process since it provides for the payment of just compensation. City of Oakland v. U.S., 124 F. 2d 959 (9th Cir. 1942); U.S. v. 47.21 Acres of Land, Parcel No. 5, et al., 48 F. Supp. 73 (1943) ; U.S. v. Eighty Acres of Land in Williamson County, Ill., et al., 26 F. Supp. 315 (1939).
In their briefs, the plaintiffs have outlined the theory they intended to advance in their defense of the condemnation action in district court, which, they say, if found to be correct would result in a judgment in their favor. They say that if the district court action had gone to judgment in their favor, the declaration of taking would fail. We do not pass on the validity of the plaintiffs’ defense to the condemnation suit. But it is perhaps worth noting that there is no clear agreement on what would be the effect on a previously filed declaration of taking, of a failure of the condemnation suit, in the courts which have commented on this point. Under the facts in U.S. v. Carey et al., 143 F. 2d 445 (9th Cir. 1944), it was held that the dismissal of the condemnation petition would not result in a divesting of the title acquired by the United States as a result of a declaration of taking. The suggestion was made by the court in U.S. v. 12,918.28 Acres of Land in Webster Parish, La., et al., 50 F. Supp. 712 (1943), that the United States could be divested of title ac *745 quired through a declaration of taking only by appropriate congressional action. It has been held that judgment entered on a declaration of taking cannot be vacated and that the court has no power to strike the declaration itself in the absence of bad faith. In Re United States, 257 F. 2d 844 (5th Cir. 1958); U.S. v. 44.00 Acres of Land, More or Less, Situate in the Town of Greece, County of Monroe, 234 F. 2d 410 (2nd Cir. 1956) cert. den. 352 U.S. 916; U.S. v. Hayes, supra.
On the other hand, it has been suggested that when the condemnation proceedings fail for lack of a valid statutory authority, the declaration of taking fails with it. We are not prepared to say that this is a correct statement of the law since we have been unable to locate any case in which a declaration of taking was nullified as a result of the Government’s failure to prevail in its condemnation suit. In any event, whether the condemnation action has gone to judgment in the landowners’ favor, thus perhaps nullifying the declaration of taking, seems to us to be a question peculiarly within the province of the district court. Our understanding is that the plaintiffs, dissatisfied because the district court proceedings were restricted to the question of just compensation, have refused to withdraw from the court the additional compensation awarded. Hence, no final judgment has been entered in the district court; certainly no judgment has been entered determining the condemnation action to be invalid because of an excessive or unauthorized taking. In the absence of any such judgment, the basic premise for plaintiffs’ challenge to vesting of title in the United States through the declaration of taking dissolves.
The same parties who are before us in this action, the petition in which raises the questions if and when the Government could acquire the Travis property, were before the United States District Court in an action involving essentially the same considerations. The plaintiffs in this action claim to have there raised the question of the validity of the condemnation, one phase of which was the declaration of taking. Any answer to a condemnation complaint must conform to the provisions of Rule 71A of the Federal Rules of Civil Procedure. Whether the Travises have satisfied this *746 requirement is again a matter peculiarly for the determination of the district court which had jurisdiction over the parties and the issues.
We perceive no reason why, at the proper juncture, the problems of the sufficiency of the answer and the district court’s restriction of the trial to the matter of compensation cannot be presented by plaintiffs to the Court of Appeals. Likewise, had there been a full hearing on the authority of the United States to take plaintiffs’ lands which resulted in a clear verdict against the plaintiffs, we think that that matter, too, could be properly presented to the Court of Appeals at the appropriate time.
The plaintiffs have characterized the act of September 1, 1959, which authorized the Fairfax County authorities to take control of the land formerly owned by them, as unconstitutional for a variety of reasons. But this position has as its foundation the premise that the declaration of taking, filed almost one year before passage of the act, did not pass title to the United States. But, as we have noted, the authority is overwhelming for the position that in the absence of a judgment invalidating or modifying a declaration of taking title to the property has vested in the United States as of that moment. If, as the'statutory and case law holds, the United States acquired title to the lands at issue on September 11,1958, with the declaration of taking, then the legislature had the right and power to dispose of them one year later. This of course depends upon the original acquisition having been authorized by law and within proper limits. But, as we have said, there has been neither showing nor determination that this was not the case.
Plaintiffs contest the validity of the 1950 airport authorization, and, presumably, they would have raised the same objections in the district court had they been permitted to do so. Not only was this the proper forum for such an issue, but it is also our understanding that the suit in that court is still under submission and no final decision has been entered.
As we observed at the outset, the plaintiffs’ theory of recovery depends upon the invalidity of the declaration of taking which vested title in the United States. They have *747 presented ns with no sound reasons why the vesting of title should be invalidated. Moreover, the district court, before which the plaintiffs claim to have put this question in issue, has taken no action to invalidate the declaration. Hence, until and unless the declaration fails, the lands in question are the property of the United States and were correctly considered so in the act of September 1, 1959. Therefore, the taking occurred on September 11,1958, and the plaintiffs have been awarded full compensation for the taking as of that date. The defendants’ motion is granted and that of the plaintiff is denied. Plaintiffs’ petition will be dismissed.
It is so ordered.
Laramore, Judge; Madden, Judge/ Whitaker, Judge, and Jokes, Chief Judge, concur.

 Title 40 U.S.C.:
§ 258a. Same; lands, easements, or rights-of-way for public use; talking of possession and title in advance of final judgment; authority; procedure
In any proceeding in any court of the TJnited States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the united States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the' lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—
(1) A statement of the authority under which and the public use for which said lands are taken.
(2) A description of the lands taken sufficient for the identification thereof.
(3) A statement of the estate or interest in said lands taken for said public use.
(4) A plan showing the lands taken.
(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.
Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compenation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.
Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.
Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable.